UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                                             CRIM. CASE NO. 24-20014
v.                                                   HON. LAURIE J. MICHELSON

STACIE ZIEGLER,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

      Beginning in or around April 2011 and continuing through October 2018, Defendant Stacie Ziegler defrauded the Social Security Administration (SSA) by collecting Disability Insurance Benefits (DIB) while intentionally concealing the fact that she was working and earning income at levels that would have disqualified her from receiving those benefits. Ziegler's conduct resulted in a total loss to the government of $121,590.20.

      On March 27, 2024, Defendant Ziegler pleaded guilty to one count of Theft of Government Funds (18 U.S.C. § 641); she is now scheduled to appear for sentencing at 10:00 a.m. on August 27, 2024. As discussed below, and consistent with the parties' Rule 11 Plea Agreement, the Government respectfully recommends a sentence at or near, but not to exceed, the bottom of the defendant's

1

guideline range. If the guideline range determined by the Court falls within Zone B of the Sentencing Table because the defendant receives an adjustment under U.S.S.G. § 4C1.1, then the Government recommends a sentence of probation.

## I.     Introduction

The United States generally adopts the timeline of relevant case events, the description of the charge to which Defendant Ziegler has pleaded guilty, and the statement of the offense conduct detailed by the Probation Department in the revised Presentence Investigation Report (PSR) dated August 12, 2024.

## II.    Calculation of Advisory Sentencing Guidelines

The Probation Department calculated the defendant's sentencing guideline range as 10-16 months, based on a total offense level of 12 and a Criminal History Category of I. (PSR ¶ 72.) In calculating these guidelines, the Probation Department assessed one criminal history point for the defendant's January 30, 2019 "Violation of Parental Responsibility" under a local ordinance issued by the City of Romulus, Michigan. (PSR ¶ 34.) According to the Probation Department, records indicate that the violation was related to the truancy of one of the defendant's daughters. (*Id.*)

The defendant formally objected to the assessment of this criminal history point under U.S.S.G. § 4A1.2(c)(2), which provides, in relevant part, that: (1) local ordinance violations (except those violations that are also violations under state

criminal law); and (2) juvenile status offenses and truancy, and offenses similar to them, by whatever name they are known, are never counted. Specifically, the defendant asserted that her violation of the ordinance is not a violation of M.C.L. § 380.1561 "Compulsory attendance at public school; enrollment dates; exceptions" – the comparable state law provided by the Probation Department. The defendant further asserted that even if it were a violation of state law, the point should not be assessed because it is a truancy offense. The defendant concluded that she should therefore be eligible for the zero-point offender adjustment under U.S.S.G. § 4C1.1.

In response, the Probation Department confirmed its belief that the corresponding state law is M.C.L. § 380.1561. It also disagreed with the defendant that the offense was a truancy violation. The Probation Department therefore declined to amend the PSR and referred the issue to the Court for further resolution.

The Government concurred with the defendant's position at the time of her objection but reserved the right to change its position if presented with contrary authority. Having reviewed the defendant's objection and the Probation Department's response, and having conducted additional independent research and analysis, the Government continues to concur with the defendant's position – that the defendant's violation of the City of Romulus's ordinance regarding "Parental

Duties and Responsibilities" is not a countable offense under the United States Sentencing Guidelines.

First, while the ordinance and M.C.L. § 380.1561 are similar in nature and purpose, the elemental differences between the two, as highlighted by the defendant in her objection, reflect that a violation of the ordinance does not necessarily equate to a violation of the state law.  Additionally, the Government is unable to discern from the limited facts before it whether the conduct and circumstances underlying the defendant's ordinance violation actually do amount to a violation of the state law.

Second, regardless of whether a violation of the Romulus ordinance is also a violation of M.C.L. § 380.1561, and regardless of their respective titles, both the ordinance and the state law inherently sound in truancy.  Indeed, it is the child with the unexcused absence from school who is truant, but parents, like the defendant here, can be, and are, held accountable for their children's truancy under the context of parental responsibility.  The truant nature of the offense does not change when the charge is lodged against the parent rather than the truant child.  This is evident from the way both federal and state courts have characterized M.C.L. § 380.1561, the statute at issue here. *See King v. City of Eastpointe*, 86 F. App'x 790, 805, n.6 (6th Cir. 2003) (citing *Sheridan Rd. Baptist Church v. Dept. of Educ.,* 426 Mich. 462, 396 N.W.2d 373, 403 n. 16 (Mich. 1986) (noting that Michigan's

4

compulsory education statute, M.C.L. § 380.1561, "is a truancy law enforceable against parents"); *Clonlara, Inc. v. Runkel*, 722 F. Supp. 1442, 1460 (E.D. Mich. 1989) (M.C.L. § 380.1561 *et seq.* places parents on notice that they may be liable in a "truancy proceeding" if they have not enrolled their child in a public school) (Friedman, J.); *White v. Pelland*, No. 07-CV-10962, 2008 WL 1735378 (E.D. Mich. Apr. 14, 2008) (probable cause existed for arrest warrant issued against parent on a "truancy charge" under M.C.L. § 380.1561) (Borman, J.); *Garcia v. Thorne*, No. 1:11-CV-361, 2012 WL 1830206, at *3 (W.D. Mich. May 18, 2012), *aff'd*, 520 F. App'x 304 (6th Cir. 2013) (noting that prosecutor's office authorized a warrant against parents for "misdemeanor truancy," in violation of M.C.L. § 380.1561); and *People v. DeJonge*, 179 Mich. App. 225, 228, 449 N.W.2d 899, 900 (1989) (noting that "formal truancy charges" were filed against parents because they failed to comply with M.C.L. § 380.1561 *et seq.*).

For these reasons, the Government concurs with the defendant that a criminal history point should *not* be assessed for her January 30, 2019 ordinance "Violation of Parental Responsibility" related to her daughter's truancy.

## III.   The Relevant § 3553 Factors

The task of a court at sentencing is to impose a sentence upon a defendant that is, "'sufficient, but not greater than necessary to comply with the purposes,' of

5

section 3553(a)(2)." *United States v. Wilms*, 495 F.3d 277, 281 (6th Cir. 2007) (*quoting United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

### (1) Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The Court must consider, in fashioning a sentence, the nature and circumstances of the offense and the history and characteristics of a defendant. 18 U.S.C. § 3553(a)(1).

Defendant Ziegler comes before the Court at the age of 47 with some health problems of varying severity, including diagnosed mental health impairments for which she began receiving Social Security Disability Insurance Benefits in 2000. She has five children, three of whom are minors, and one of whom reportedly has some significant developmental challenges. (Ziegler's children were eligible for and also received Social Security benefits based on Ziegler's eligibility.) Ziegler's criminal history includes two remote-in-time fraud convictions, the aforementioned deferred dismissal of the truancy ordinance violation, and several arrests for various offenses.

Despite Ziegler's mental impairments, she earned an Associates of Arts degree and obtained a cosmetology license in 2008. She reportedly began working as a hair stylist out of her home in or around 2009. She then began working at a local salon in or around January 2011, and continued to work there through 2018.

As a recipient of disability benefits, Ziegler was obligated to notify the SSA if and when she returned to work and to report her earnings to the SSA. Ziegler was on full notice of her reporting obligations, yet she failed to comply with them. Instead, Ziegler lied to the SSA about her work activity because she knew that it would affect her eligibility for benefits. Specifically, when completing SSA forms designed to determine her continuing eligibility for disability benefits, Ziegler lied to the SSA on multiple occasions by significantly discounting the extent of her work activity and the amount of her earnings:

- August and September 2011 – Ziegler reported that she stopped working as a hair stylist in June 2010 because of a nervous breakdown.

- March 2012 – Ziegler reported that she worked as a hair stylist out of her home from January 1, 2008, through August 31, 2011. She stated that she stopped working "due to depression and [her] illness." She also stated, "I understand I will report to SSA if I return back to work."

- June 2012 – Ziegler stated that since June 2010, she had only worked out of her house a couple months out of each year.

- August 2014 – Ziegler reported that she hadn't worked in over three years and had "no income to show at this time."

- June 2016 – Ziegler reported that she had not worked for someone or been self-employed since June 2014.

In reality, Ziegler worked at the salon from 2011 through 2018, and was earning income at levels that would have disqualified her from receiving disability benefits. When later questioned by agents, Ziegler admitted that she was not

7

truthful with the SSA about her work activity because she knew that it would affect her benefits.

Ziegler's conduct was not a passive crime, nor was it a momentary lapse in judgment. Rather, Ziegler made a deliberate choice to blatantly lie to the SSA on at least six occasions in order to continue receiving Social Security disability benefits to which she knew she was not entitled. She then continued to collect those benefits on behalf of herself and her children, month after month, year after year, for over seven years. She could have stopped of her own volition at any time, but she chose not to.

### (2) Seriousness of the Offense, Respect for the Law, And Just Punishment

The second factor requires the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A).

The government believes that the defendant's crime – concealing and lying to the government about one's work activity and income for years in order to maintain one's eligibility for government benefits – is a serious offense. Offenses such as this negatively affect the public's perception of social welfare programs; specifically, these crimes erode confidence in the Social Security Administration and its ability to safeguard taxpayer contributions.

Moreover, it is important to understand that this is not a "victimless" crime. Theft from the government is theft from the taxpayers that fund the government. Taking money from the Social Security Administration is an affront against every hardworking individual who pays into the system in hopes that it will still be there to support them in their retirement or the event of a disability. As the Court is likely aware, the Social Security system is in jeopardy and conduct such as that of the defendant puts the system at even greater risk of insolvency. Now more than ever, program integrity is a topic of significant concern amongst lawmakers, highlighting the need for those who steal from the government to be held accountable.

Simply having to pay the money back would <u>not</u> be a "just punishment," but rather a concession that this defendant – for all practical purposes – is entitled to demand a long-term, interest-free loan from her fellow citizens, which may never be repaid in full.

**(3)   Need to Afford Adequate Deterrence & Protect the Public**

The sentence imposed must also, "afford adequate deterrence to criminal conduct and […] protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C).

The United States acknowledges that the defendant's previous fraud convictions are remote in time. Nevertheless, the probationary sentences she

served for those crimes did not deter her from committing the instant offense over the course of seven years. Should the Court impose a probationary sentence here, a condition or combination of conditions contemplated by U.S.S.G. § 5C1.1(c)(3), involving intermittent confinement, community confinement, or home detention, might be sufficient to discourage *her* from engaging in additional criminal conduct.

However, the sentence imposed in this case should also serve to deter *others* who seek to profit by stealing from the government. Thousands and thousands of people receive benefits from the SSA and its programs, making the agency an attractive target for fraud and malfeasance. Whatever sentence the Court imposes needs to be sufficient to dissuade the public from engaging in misconduct akin to that of the defendant and send a message to other would-be thieves that there are significant consequences for defrauding the Social Security Administration.

### (4)   Effective Training and Treatment

Additionally, the sentence imposed must, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The defendant graduated from high school, earned an Associates of Arts degree, and obtained her cosmetology license. She also formed a limited liability company (LLC), "Talented by Stacie Love," in 2023. There is no indication that the defendant wishes to continue her education. However, should the Court

impose a custodial sentence, the Government would encourage the defendant to take advantage of any relevant educational opportunities or vocational training offered by the Bureau of Prisons.

As for the defendant's health, the government believes that the Bureau of Prisons is fully capable of treating the defendant's health issues during any term of incarceration. Additionally, the Government would encourage the Court to impose the special conditions for mental health treatment suggested by the Probation Department in ¶ 96 of the PSR during any term of supervision.

### (5)   Kinds of Sentences Available and Sentencing Range

The Court must also consider, "the kinds of sentences available …[and] the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing] guidelines." 18 U.S.C. §§ 3553(a)(3), 3553(a)(4)(A).

The defendant's offense is a Class C felony. The Probation Department's calculation of the sentencing guidelines places her in Zone C of the sentencing table. Under the guideline provision applicable to Zone C, the "minimum term" of the defendant's advisory guideline range (10 months) may be satisfied by:

(1) a sentence of imprisonment; or

(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or

> home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

U.S.S.G. § 5C1.1(d).

Calculation of the sentencing guidelines with the addition of the § 4C1.1 "Zero-Point Offender" adjustment would place the defendant in Zone B of the sentencing table. Under the applicable guideline provision, the "minimum term" of the defendant's advisory guideline range (here 6 months) may be satisfied as follows:

> (1) a sentence of imprisonment;
>
> (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or
>
> (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

U.S.S.G. § 5C1.1(c).

### (6) Restitution, Fines, and Forfeiture

Finally, a court must consider whether there is a need to impose restitution to any victim or victims of the defendant's offenses. 18 U.S.C. § 3553(a)(7).

The defendant's crime created a financial loss to the United States. Specifically, Ziegler obtained SSA disability benefits to which she was not entitled in the amount of $78,790.20. Ziegler's children also received benefits on the defendant's record to which they were not entitled in the amount of $42,800.00, collectively. The parties agree that the total value of all benefits unlawfully received as a result of the defendant's conduct was $121,590.20. Thus, the government seeks imposition of a mandatory restitution order under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, in the amount of $121,590.20 to the Social Security Administration. In addition to ordering restitution, the government would ask the Court to adopt the special conditions suggested by the Probation Department in ¶ 101 of the PSR.

## IV.  Conclusion

Having considered the factors set forth in 18 U.S.C. § 3553(a), and consistent with the parties' Rule 11 Plea Agreement, the government respectfully recommends a sentence at the bottom of the guideline range. If the guideline range determined by the Court falls within Zone B of the Sentencing Table because the defendant receives an adjustment under U.S.S.G. § 4C1.1, then the Government

also recommends a sentence of probation. Ultimately, the Government asks the Court to impose whatever reasonable sentence it determines to be sufficient but not greater than necessary to comply with the purposes stated in 18 U.S.C. § 3553.

The United States further asks the Court to require the defendant to pay the mandatory $100.00 special assessment to the Clerk of the Court, and order the defendant to pay restitution in the full amount of $121,590.20 to the Social Security Administration.

Respectfully Submitted,

DAWN N. ISON  
United States Attorney

*s/Corinne M. Lambert*  
CORINNE M. LAMBERT  
Special Assistant U.S. Attorney  
211 W. Fort Street, Suite 2001  
Detroit, Michigan 48226  
(313) 226-9129  
Corinne.Lambert@usdoj.gov

Date: August 20, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that on August 20, 2024, I filed the foregoing electronically via the CM/ECF system, which will send notification of such filing to counsel of record:

Daniel S. Dena
Assistant Federal Defender
Federal Community Defender -
Eastern District of Michigan
613 Abbott Street
Detroit, Michigan 48226
(313) 967-5834
Daniel_Dena@fd.org

A copy was also provided to United States Probation Officer Jennifer Danysh via email.

                                               *s/Corinne M. Lambert*
                                               CORINNE M. LAMBERT